UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3370 PA (JCGx) | Date | August 19, 2013 |
|---|---|---|---|
| Title | Cynthia L. Thompson v. Housing Authority of the City of Los Angeles, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Paul Songco | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| None | None | |

**Proceedings:**   IN CHAMBERS - ORDER

Before the Court is a Motion to Dismiss the First Amended Complaint filed by defendants Housing Authority of the City of Los Angeles ("HACLA") and LA LOMOD Corporation ("LA LOMOD") ("Defendants"). [Docket No. 13.]  Pro se plaintiff Cynthia L. Thompson ("Plaintiff") has filed an Opposition.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter is appropriate for decision without oral argument.  The hearing calendared for August 19, 2013 is vacated, and the matter taken off calendar.

**I.     Factual & Procedural Background**

Viewing, as the Court must, the factual allegations in the First Amended Complaint ("FAC") in the light most favorable to Plaintiff, the facts are as follows.

In December 2009, Plaintiff was hired by LA LOMOD as a Compliance Assistant.  Plaintiff alleges that beginning in December 2009 she was subjected to a "sexually predatory pursuit" from her direct supervisor, Mr. Earl Hearvey.  (First Amended Complaint ("FAC") ¶ 7.)  Specifically, Plaintiff alleges that Mr. Hearvey "called [her] into his office, alone, behind closed doors" and requested that Plaintiff be his assistant.  (Id.)  She alleges that this request was coupled with subtle sexual gestures, innuendo, and sexual physical posturing.  Plaintiff alleges that her female co-workers were keenly aware of the sexual attention she allegedly received from Mr. Hearvey, and that as a result her work environment became "tense, competitive, and on occasion physically threatening," as her female co-workers perceived Mr. Hearvey's advances as a "pre-cursor to preferential treatment."  (Id. ¶ 8.)

Plaintiff alleges that Mr. Hearvey's sexually-inappropriate treatment toward her persisted for three months.  Specifically, Mr. Hearvey's behavior allegedly involved "sexual gawking, attempts to isolate, suggestive winks, hovering, threatening sexual posturing, etc."  (Id.)  He also would pass Plaintiff papers and other work product in a sexually suggestive manner, "sliding" it on the seat of her chair.  (Id. ¶ 9.)  Mr. Hearvey would routinely call Plaintiff into his office for closed-door meetings, and allegedly would refuse or ignore Plaintiff's requests to hold the meetings in more public spaces or with the doors open.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3370 PA (JCGx) | Date | August 19, 2013 |
|---|---|---|---|
| Title | Cynthia L. Thompson v. Housing Authority of the City of Los Angeles, et al. | | |

After three months of this behavior, Plaintiff alleges that Mr. Hearvey, frustrated in his sexual advances, became "retaliatory." (Id. ¶ 10.) Mr. Hearvey subjected Plaintiff to "excessive scrutiny of [her] job performance, [excessive] monitoring of [her] daily activities, and curt email responses when instruction was sought." (Id.) This excessive scrutiny and continued sexually-suggestive activity led Plaintiff to request a transfer to a department at another office. Upon receiving this request, Mr. Hearvey responded, "Are you trying to leave me?" Her transfer request was later denied without explanation. Plaintiff also alleges that although she was subject to scrutiny and work complaints from Mr. Hearvey, she never received any written reprimand and no written notations of any meetings were made by him.

Finally, on March 29, 2010, fearing further advances and "reprisal[s], and believing that Mr. Hearvey was sabotaging [her] efforts to get away from him," Plaintiff emailed LA LOMOD Director Nancy Wesoff regarding the "scenario" she was experiencing. (Id. ¶¶ 12-13; see also id. Ex. D (email of March 29, 2010 to Nancy Wesoff).) Nancy Wesoff responded that Plaintiff should meet with her immediately and that "[t]his type of action is not tolerated by LOMOD or HACLA." (Id., Ex. D.)

Plaintiff met with Nancy Wesoff and Connie Alvarez, from LA LOMOD Human Resources, on March 31, 2010, where she further explained the actions taken against her by Mr. Hearvey. No official action was taken more until April 16, 2010, when LA LOMOD finally initiated an Administrative Investigation. Plaintiff alleges that this Administrative Investigation "focused less on harassment and more on [her] performance and relationships within the department, [which] fuel[ed] [Plaintiff's] belief that [she] was being entrapped and that the investigation was organized to document negatives related to her performance." (Id. ¶ 17.) "With all this in mind, and given the hostile and toxic environment that [she] would return to as a result of the emailed allegation, the Administrative Investigation and [her] reluctance to sign an employment agreement that [she] believed to be fraudulent," Plaintiff resigned soon after the April 16, 2010 meeting.

During the period after Plaintiff initiated contact with Nancy Wesoff, and until her resignation, Plaintiff alleges that "the performance scrutiny by Mr. Hearvey intensified. . . . He found whatever he could to confront me." (Id. ¶ 15.) She also alleges that Mr. Hearvey made false statements about her behaviors towards him, and forced her to have unscheduled, closed-door meetings with him to discuss her supposedly poor job performance, none of which he documented.

Sometime in 2012 Plaintiff initiated a complaint with the Equal Employment Opportunity Commission. Plaintiff then filed this action in this Court on May 10, 2013, alleging the following causes of action: (1) constructive discharge, in violation of Title VII, 42 U.S.C. § 2000e-2(a); (2) hostile work environment, in violation of Title VII, 42 U.S.C. § 2000e(k)(1)(A); and (3) retaliation, in violation of Title VII, 42 U.S.C. § 2000e-3(a). Plaintiff filed the FAC on June 21, 2013.

Defendants now move to dismiss the FAC in its entirety for failure to state a claim. Having considered the parties' submissions, and for the reasons that follow, the Court denies Defendants' Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3370 PA (JCGx) | Date | August 19, 2013 |
|---|---|---|---|
| Title | Cynthia L. Thompson v. Housing Authority of the City of Los Angeles, et al. | | |

**II.     Legal Standard**

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp. , 108 F.3d 246, 248–49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000))). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964–65 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 679, 664 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); Vasquez v. Los Angeles County, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. Parks School of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3370 PA (JCGx) | Date | August 19, 2013 |
|---|---|---|---|
| Title | Cynthia L. Thompson v. Housing Authority of the City of Los Angeles, et al. | | |

Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990)).

As a pro se litigant, Plaintiff is afforded a liberal construction of the FAC and held to a less stringent standard than formal pleadings drafted by lawyers. See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). However, "a pro se's party status does not relieve the party of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . Bald assertions and conclusions of law will not suffice." Chapman v. The Chronicle, 2009 U.S. Dist. LEXIS 4260, at *4 (N.D. Cal. Jan. 12, 2009) (citations omitted).

**III.    Analysis**

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. It also prohibits an employer from retaliating against an individual because he or she has made a charge of discrimination or opposed a discriminatory practice. 42 U.S.C. § 2000e-3.

To establish a prima facie case of discrimination, the plaintiff must show that: (1) she belongs to some protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action, such as termination, demotion, or denial of an available job; and (4) the employer treated similarly situated employees outside her classification more favorably. Chuang v. Univ. of Cal., Davis, Bd. of Trustees, 225 F.3d 1115, 1123 (9th Cir. 2000). To establish a prima facie case of retaliation, a plaintiff must show "(1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action." Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1034-35 (9th Cir. 2006).

    **A.    Hostile Work Environment & Constructive Discharge Claims**

Defendants first argue that Plaintiff's allegations fail as a matter of law to establish that she was the victim of a hostile work environment or a constructive discharge. Given the conceptual relatedness of these claims, the Court considers them together.

        1.    Hostile Work Environment Claims

Unlawful discrimination under Title VII may manifest itself in many forms, including harassment so severe or pervasive that it creates a hostile work environment. See, e.g., EEOC v. Prospect Airport Services, Inc., 621 F.3d 991, 997 (9th Cir. 2010) (sexual harassment). To establish a prima facie claim for harassment and a hostile work environment, a plaintiff must show (1) that she was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3370 PA (JCGx) | Date | August 19, 2013 |
|---|---|---|---|
| Title | Cynthia L. Thompson v. Housing Authority of the City of Los Angeles, et al. | | |

subjected to verbal or physical conduct because of a protected characteristic (e.g., race, sex, or religion), (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. See Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003) (listing elements of prima facie claim for hostile work environment based on race under Title VII).

In determining whether harassment is severe or pervasive such that it gives rise to a hostile work environment, courts must look at "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). The conduct at issue, as a whole, must amount to something more than simple teasing, offhand comments, or isolated incidents (unless extremely serious). See Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998). Title VII is not a civility code designed to rid the workplace of all vulgarity and inappropriate conduct. Id.

  2.  Constructive Discharge

Title VII also encompasses employer liability for the constructive discharge of an employee. Pennsylvania State Police v. Suders, 542 U.S. 129, 143, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2006). "When an employee involuntarily resigns in order to escape intolerable and illegal employment requirements to which he or she is subjected because of race, color, religion, sex, or national origin, the employer has committed a constructive discharge in violation of Title VII." Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993); see also 42 U.S.C. § 2000e-2(a). A constructive discharge also may constitute an adverse employment action where the constructive discharge was done in retaliation for opposing unlawful conduct under Title VII or for participating in a process under Title VII. See Hernandez-Torres v. Intercontinental Trading, 158 F.3d 43, 47 (1st Cir. 1999); Jordan v. Clark, 847 F.2d 1368, 1377 (9th Cir. 1988); see also 42 U.S.C § 2000e-3(a).

"A constructive discharge occurs when the working conditions deteriorate . . . to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." Poland v. Chertoff, 494 F.3d 1174, 1184 (9th Cir. 2007); Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000). The bar for a constructive discharge is set high. Poland, 494 F.3d at 1184. Constructive discharge requires a showing that a reasonable person in the plaintiff's position would have felt that she was forced to quit because of intolerable and discriminatory working conditions. Huskey v. City of San Jose, 204 F.3d 893, 900 (9th Cir. 2000). Thus, a plaintiff alleging a Title VII constructive discharge must show that: (1) the working conditions were so intolerable that a reasonable person would have felt forced to resign; and (2) the intolerable working conditions must be intolerable because of unlawful discrimination. Simpson v. Borg-Warner Auto., Inc., 196 F.3d 873, 877 (7th Cir. 1999); cf. Huskey, 204 F.3d at 900; Morgan, 6 F.3d at 755. Claims for constructive discharge may be better understood in relation to claims for hostile work environment: "[w]here a plaintiff fails to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3370 PA (JCGx) | Date | August 19, 2013 |
|---|---|---|---|
| Title | Cynthia L. Thompson v. Housing Authority of the City of Los Angeles, et al. | | |

demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job." Manatt, 339 F.3d at 804.

Whether working conditions have become so intolerable as to justify a reasonable employee's decision to resign is normally a question of fact for the jury, but, in rare cases, the court may determine that a plaintiff's allegations are insufficient to establish intolerable working conditions. Huskey, 204 F.3d at 900.

   3.  Analysis

Defendants move to dismiss Plaintiff's hostile work environment and constructive discharge claims, arguing that Plaintiff's allegations fail as a matter of law to rise to the level required to sustain such claims. Defendants isolate Plaintiff's allegations in an attempt to diminish their overall tenor, and then argue that the alleged conduct is merely "innocuous" and, at most, consists of "only harmless managerial actions taken by Mr. Hearvey that supervisors across the nation take with respect to their subordinates on a daily basis." (Motion to Dismiss FAC at 4, 5.)

Fairly read, however, Plaintiff's allegation described a series of sexual advances from her direct superior taking place over the course of almost four months, during which time she was subjected to "sexual gawking, attempts to isolate, suggestive winks, hovering, threatening sexual posturing, etc." (FAC ¶ 8.) These sexual advances were accompanied by allegedly unwarranted daily scrutiny and accusations of poor work performance, which increased as Plaintiff's rejections of Mr. Hearvey became more forthright. It is true that the allegations in the FAC – such as persistent advances, inappropriate flirting, use of subtle sexual innuendoes and gestures (e.g., looking Plaintiff up and down, staring at her crotch area and buttocks, winking, gawking, etc.) – do not involve physical contact or overtly abusive language. (See Motion to Dismiss at 7.) However, construing all inferences in favor of Plaintiff, the Court cannot say as a matter of law at this stage of the proceedings that Mr. Hearvey's alleged actions did not create a hostile work environment or so alter the conditions of Plaintiff's employment that no reasonable person would have resigned in the face of such treatment.

Defendants also argue that Plaintiff's allegations lack specificity. For example, Plaintiff "does not explain why she viewed the looks from Mr. Hearvey as sexual in nature" or state precisely what sexually charged comments Mr. Hearvey made. That is not Plaintiff's burden at the pleading stage, however. Plaintiff's FAC, fairly read, alleges a plausible scenario of sexual harassment in the workplace that could lead a reasonable person to terminate her employment rather than continue under such working conditions, and puts Defendants on notice of Plaintiff's claims. That is sufficient under the "notice" pleading standard of the Federal Rules of Civil Procedure. See Twombly, 550 U.S. at 555.

Accordingly, the Court finds that Plaintiff has plausibly alleged claims against Defendants for hostile work environment and constructive discharge in violation of Title VII.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3370 PA (JCGx) | Date | August 19, 2013 |
|---|---|---|---|
| Title | Cynthia L. Thompson v. Housing Authority of the City of Los Angeles, et al. | | |

**B.     Retaliation**

Title VII prohibits retaliation against a person because she "opposed any practice made an unlawful employment practice" by Title VII or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). An employee opposes an unlawful employment practice when she opposes discrimination based on sex, race, color, religion, and national origin or she opposes what she reasonably believes is discrimination based on these classes. Learned v. Bellevue, 860 F.2d 928, 932 (9th Cir. 1988); Lee v. Potter, 2008 U.S. Dist. LEXIS 76841, at *20-21 (N.D. Cal. Sept. 30, 2008).

Here, Plaintiff alleges that after contacting LA LOMOD's Human Resources Department, she was subjected to increased scrutiny of her job performance, both directly from Mr. Hearvey and also from other managerial personnel during the course of the Administrative Investigation.

Again, Defendants move to dismiss Plaintiff's claim on the basis that Plaintiff's allegations are insufficient to constitute retaliation as a matter of law. Defendants first argue that Plaintiff's claims fail because increased job scrutiny and critiques of performance are insufficient to state a claim for retaliation. However, in the Ninth Circuit "[I]n the Title VII context, a materially adverse action exists when the challenged action well might have dissuaded a reasonable person from making or supporting a charge of discrimination, such as an undeserved poor performance rating." Thompson v. Donahoe, 2013 U.S. Dist. LEXIS 91403, at *21-22 (N.D. Cal. June 27, 2013) (citing Emeldi v. Univ. of Oregon, 698 F.3d 715, 726 (9th Cir. 2012)). Defendants also argue that Plaintiff's claim should be dismissed because "[a]ny counseling provided to Plaintiff because of her work performance is normal supervisory duties [sic] and would not lead a reasonable person to resign her employment." (Motion to Dismiss at 8.) However, whether the increased job scrutiny and negative performance evaluations Plaintiff experienced were warranted is a factual dispute and are not proper for resolution on a motion to dismiss.

At this stage of the proceedings, the Court must take as true the FAC's well-pled factual allegations. Plaintiff has alleged that she was retaliated against from Mr. Hearvey and others through negative job performance scrutiny and evaluations, as well as through an Administrative Investigation that focused mostly on her own job performance rather than her accusations of sexual harassment. These allegations state a plausible claim for relief under Title VII. See Emeldi, 698 F.3d at 726.

**Conclusion**

In light of the foregoing, the Court denies Defendants' Motion to Dismiss the FAC. Defendants' response to the FAC, if any, is due no later than September 3, 2013. Failure to respond to the FAC by that date may result in the imposition of sanctions, including the entry of Defendants' default.

IT IS SO ORDERED.